# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:15-CR-50-TLS |
| | ) | |
| CHRISTOPHER E. COOK | ) | |

## OPINION AND ORDER

The Defendant, Christopher E. Cook, is facing a charge that he violated 21 U.S.C. § 846 when he conspired to distribute and possess with the intent to distribute heroin and marijuana. He seeks an order from the Court suppressing any statements he made to federal investigators who interviewed him during his visit to the office of his Indiana parole officer. He also hopes to exclude any evidence that was obtained as a result of those statements. The Defendant's Motion to Suppress [ECF No. 25] turns on whether the law required that the officers advise the Defendant of his constitutional rights, as set forth by the Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966). This, in turn, depends on whether the facts show that the Defendant was in custody and subjected to interrogation. In a Report and Recommendation [ECF No. 46], issued on May 18, 2017, Magistrate Judge Susan Collins found that the Defendant was not in custody because, in light of all of the circumstances, a reasonable person in the same situation as the Defendant would have felt free to terminate the interview. Accordingly, she concluded that the Defendant's statements were not obtained in violation of the Fifth Amendment and *Miranda*, and recommended that this Court deny the Defendant's Motion to Suppress.

This matter is now before the Court on the Report and Recommendation [ECF No. 46], and the Defendant's Objections to the Report and Recommendation [ECF No. 47]. The Court has reviewed the submissions, and now adopts Magistrate Collins's Report and Recommendation.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1)(A)–(B), a magistrate judge does not have authority to issue a final order on a motion to suppress evidence in a criminal case. Instead, the magistrate judge submits proposed findings of fact and recommendations to the district court. If a party files a timely objection to the magistrate judge's report and recommendation, § 636(b)(1) provides that

> the district judge is to make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The court may accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge also may receive further evidence or recommit the matter to the magistrate judge with instructions.

Portions of a recommendation to which no party objects are reviewed for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

The Defendant objects to the Magistrate Judge's finding that the Defendant was not in custody, and submits that under the circumstances, the normal person could only assume that he was not free to leave the room where the interrogation took place. The Defendant has not requested a hearing, or challenged the credibility of any of the witnesses, and the Court finds that the record before the Magistrate Judge is sufficient to allow this Court to make a de novo determination. *See United States v. Raddatz*, 447 U.S. 667, 673–76 (1980) (holding that de novo review does not require a de novo evidentiary hearing, even when witness credibility is at issue).

**ANALYSIS**

Before police can conduct a custodial interrogation of a suspect, they must advise him of certain rights and abide by certain procedures. *Miranda*, 384 U.S. at 444. The rights a suspect must be informed of include the right to remain silent, the right to have an attorney present, and

the right to have an attorney who is retained or appointed. *Id.* The Supreme Court has defined a "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 467. "Although the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving of *Miranda* protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). This is an objective test that asks whether a "reasonable person" in the circumstances would have believed he was free to go, not whether the particular defendant believed so. *United States v. Salyers*, 160 F.3d 1152, 1159 (7th Cir. 1998). Factors relevant to the totality of circumstances include: "(1) the location of the interrogation; (2) the duration of the interrogation; (3) any statements made by the suspect during the interrogation; (4) any use of physical restraints during the interrogation; and (5) whether the suspect was released at the end of the interrogation." *United States v. Patterson*, 826 F.3d 450, 455 (7th Cir. 2016). A non-exhaustive list of example factors includes whether the encounter was in a public place, whether the suspect consented to speaking to the officer, whether the officers told the suspect he was not under arrest and was free to leave, whether the person was moved from one location to another, whether there was a threatening presence of several officers and display of weapons or physical force, and whether the officers used a tone that would likely prompt obedience. *Id.* (first quoting *United States v. Littledale*, 652 F.3d 698, 701 (7th Cir. 2011), then citing *United States v. Snodgrass*, 635 F.3d 324, 327 (7th Cir. 2011)).

The Defendant does not dispute any of the facts that the Magistrate Judge included in the

Report and Recommendation, and the Court adopts the Findings of Facts as set forth in Section B of the Report. Those facts are incorporated herein.

The Defendant's objection centers on how a reasonable person would have interpreted the facts contained in the Report and Recommendation, particularly as it related to whether he was free to end the interrogation and leave. In the Defendant's view, his status as a parolee meant that he was already "in a custodial position." (Def.'s Obj. 2, ECF No. 47.) He highlights that his status as sex offender subjected him to stricter supervision and more regulation and control than other persons released from confinement. The Defendant urges the Court to view his parolee status and the security measures that accompanied his visit to the Indiana Parole Office as indicative of the custodial nature of that visit. He also notes that, because he was still required to meet with his parole officer even after he declined to answer further questions from the agents, it cannot be said that he was allowed to immediately leave the premises.

"Not all restraints on freedom of movement amount to custody for purposes of *Miranda*." *Howes v. Fields*, 565 U.S. 499, 509 (2012). [T]he freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody." *Maryland v. Shatzer*, 559 U.S. 98, 112 (2010). For example, even though a routine traffic stop significantly curtails the freedom of movement of the driver and any passengers, a person detained as a result of a traffic stop is not in *Miranda* custody. *Berkemer v. McCarty*, 468 U.S. 420 (1984). Significant for this case, even imprisonment does not, by itself, create a *Miranda* custodial situation. *Howes*, 565 U.S. at 511. Accordingly, the Court rejects the Defendant's argument that his status as a strictly supervised parolee, or the requirement that he meet with his parole officer under restricting circumstances, is sufficient to find that he was in custody for purposes of *Miranda*.

4

Instead, the Court looks to the "features of the interrogation," *id.* at 514, and finds—as did the Magistrate Judge—that they did not render it coercive in nature. On one side, as the Magistrate Judge noted, was the Defendant's lack of prior knowledge that his visit to the parole office was not a routine visit with his supervising officer. However, the remainder of the "objective facts are consistent with an interrogation environment in which a reasonable person would have felt free to terminate the interview and leave." *Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004). The encounter with the agents took place in a setting that was familiar to the Defendant. *See Minnesota v. Murphy*, 465 U.S. 420, 433 (1984) (considering as a factor that the interrogation took place at the probation office where the defendant regularly met with his probation officer, and that such familiarity served to insulate the defendant from psychological intimidation that might overbear his desire to assert the privilege). The process the Defendant underwent when he arrived at the parole office, which included being buzzed into the internal offices, removing everything from his pockets, and being wanded with a metal detector to ensure he did not have any weapons, was all part of the normal procedures the Defendant went through each time he visited the parole office. As such, they were "expected and familiar and thus [did] not involve the same 'inherently compelling pressures' that are often present when a suspect is yanked from familiar surroundings in the outside world and subjected to interrogation in a police station." *Howes*, 565 U.S. at 511 (quoting *Shatzer*, 559 U.S. at 104–05). So too was it normal for the Defendant to meet with his parole officer—even the conference room was the same room where the Defendant usually met with his parole officer.

The only surprise was that federal agents were in the conference room when the Defendant arrived. But not being informed in advance that agents wanted to talk to him did not

turn the meeting into one that a reasonable parolee would believe he could not terminate. The Defendant sat near the unlocked conference room door with nobody between him and the door. *See United States v. Ambrose*, 668 F.3d 943, 957 (7th Cir. 2012) (distinguishing conference room setting from case where "lilliputian space . . . meant that one detective was essentially blocking the door, such that the suspect would have had to ask him to move or brush by him in order to exit"). The interview lasted only thirty minutes. *See Stechauner v. Smith*, 852 F.3d 708, 711, 716 (7th Cir. 2017) (characterizing a 90-minute interrogation as "relatively short," which weighed in favor of voluntariness). The agents were not in uniform, they did not display their weapons, and their tone remained calm and cooperative throughout. *See Ambrose*, 668 F.3d at 957–58 (noting that the presence of only two agents in business clothes, and the tenor of the conversation, weighed against a finding that the situation was custodial). The Defendant was not threatened with any adverse consequences, including any that would impact his parole. The agents informed the Defendant that they wanted to talk to him about a drug operation they were investigating, with the hope that the Defendant would help them as a cooperator. In keeping with this, the agents told the Defendant that they were not there to arrest him. *United States v. Borostowski*, 775 F.3d 851, 862 (7th Cir. 2014) (stating the fact that defendant was told he was not under arrest or in custody weighed in favor of voluntariness); *Ambrose* 668 F.3d at 957 (holding that circumstances of interview were "not indicative of custody, but if any doubt remained it would have been dispelled when" the defendant was informed "that he was not under arrest"); *Littledale*, 652 F.3d at 702 (emphasizing the importance of assuring the defendant he was not under arrest, even though the questioning agents did not tell the defendant that he was free to leave).

Before the questioning even began, the Defendant's parole officer informed the Defendant that she wanted to meet with him after he was finished talking with the agents. Accordingly, the Defendant was not placed in a situation where he would have been pressured to speak in hopes that he would be allowed to immediately leave. *Cf. Howes*, 565 U.S. at 511 (noting that, unlike a person taken to a station house for questioning, a prisoner is "unlikely to be lured into speaking by a longing for prompt release" because he knows he will remain under confinement when the questioning ceases). To the contrary, he "would have been subject to this same restraint even if he had been taken to the conference room for some reason other than police questioning." *Id.* at 515. "[H]aving to check with a state probation officer before leaving a state probation office would not cause a reasonable person to feel that he was unable to terminate and leave a federal law enforcement officer's interrogation." *United States v. Cox*, 322 F. Supp. 2d 832, 837 (E.D. Mich. 2004).

The agents chose the parole office as the location for the questioning to prevent a member of the drug conspiracy from seeing the Defendant talking to the agents. Their concern for the Defendant's safety, as well as the need to preserve the integrity of the investigation if the Defendant cooperated, puts the location of the questioning in its proper context. *See Littledale*, 652 F.3d at 702 (excusing interview in campus police station because of privacy concerns in interviewing suspect about child pornography around his peers); *see also Howes*, 565 U.S. at 513 (noting that questioning conducted in isolation from the general prison population "is often in the best interest of the interviewee and, in any event, does not suggest on its own the atmosphere of coercion that concerned the *Miranda* court"). A reasonable person in the Defendant's position would have likely appreciated the basis for selecting the parole office to ask questions about his

willingness to cooperate in the investigation of a large scale drug conspiracy.

In his objections to the Report and Recommendation, the Defendant refers to the "nature of the accusations" the agents were making as evidence that the Defendant would have felt threatened. He does not explain what he means by this. *Miranda* rights are not required "simply because . . . the questioned person is one whom the police suspect." *Mathiason*, 429 U.S. at 495. Additionally, "the nature of probation is such that probationers should expect to be questioned on a wide range of topics relating to their past criminality." *Murphy*, 465 U.S. at 432. At the point in the questioning where the Defendant was confronted with the text messages about setting up a warehouse to offload drugs, the Defendant became upset and the questioning stopped.

The Defendant asserts that the Magistrate's decision does not take into consideration why the Defendant was confined to electronic monitoring after the interrogation ended. The evidence shows that the probation officer's decision to put the Defendant on monitoring was not communicated to the Defendant until after the interview. Thus, it could not have had any impact on what the Defendant, or a reasonable person in his position, believed about the consequences of terminating the interrogation. The agents did not recommend or request any additional supervision or other actions by parole. *See id.* (stating that fear of revocation is not a ground for ruling that a probationer's confession deprived him of his Fifth Amendment privilege, provided that the officers did not tell the probationer that his probation would be revoked if he refused to talk).

For these reasons, the Court accepts the Magistrate Judge's conclusion that the Defendant was not in custody, and his statements were not obtained in violation of the Fifth Amendment

and *Miranda*. Accordingly, the Motion to Suppress is denied.

## CONCLUSION

For the reasons stated above, the Court ADOPTS the Report and Recommendation [ECF No. 46], and DENIES the Motion to Suppress [ECF No. 25]. A separate scheduling order will be issued.

SO ORDERED on June 21, 2017.

                                                 s/ Theresa L. Springmann
                                                CHIEF JUDGE THERESA L. SPRINGMANN
                                                UNITED STATES DISTRICT COURT